[No. 13649.    Department One.    December 12, 1916.]

THE STATE OF WASHINGTON, *on the Relation of P. E. Hall, Junior, Plaintiff*, v. C. V. SAVIDGE, *as Commissioner of Public Lands, Respondent*.[1]

MINES AND MINERALS—LEASE—RIGHT TO LEASE—COMMISSIONER OF PUBLIC LANDS—POWERS. Rem. 1915 Code, § 6791, providing for the leasing of state lands for the purpose of mining and extraction of petroleum and gas, leaves no discretion in the commissioner of public lands where a qualified person has complied with the provisions of the statute.

SAME—LEASE—POWERS OF COMMISSIONER—"LANDS BELONGING TO STATE." Rem. 1915 Code, § 6791, providing for the leasing of "any land belonging to the state" for the purpose of mining and extraction of petroleum and gas, applies to lands which have been sold by the state, under Id., § 6675, reserving to the state all oils, gases, and minerals and the right to enter for the purpose of taking the same.

SAME—LEASE—RIGHT TO LEASE—CONDITIONS PRECEDENT. Under Rem. 1915 Code, § 6675, reserving to the state, its successors and assigns, all oils, gases and minerals on lands sold by the state, with the right to enter for the purpose of taking the same, with the proviso that the state's reserved rights shall not be exercised until provision has been made by the state, its successors or assigns, to pay to the owner of the land full damages sustained by reason of the entry, an applicant of an oil lease of state lands must show that provision has been made to pay to a contracting purchaser from the state the damages that he will sustain by reason of the entry, as such person is the "owner" within the meaning of the act.

Application filed in the supreme court August 29, 1916, for a writ of mandamus to compel the state land commissioner to issue a lease for the mining of oils and gases on state lands. Denied.

[1]Reported in 161 Pac. 471.

*Lee C. Delle,* for plaintiff.

*The Attorney General* and *R. E. Campbell, Assistant,* for respondent.

FULLERTON, J.—This is an original application for a writ of mandamus. It is before us on the petition of the relator for the writ and the demurrer thereto by the respondent.

In substance, the petition recites the following facts: On April 2, 1910, the state, being then the owner of a certain section of land situated in Benton county, entered into a contract, in the manner provided by statute, for the sale of the same to one S. W. Macy, reserving to itself, its successors and assigns forever, all oils and gases in such land contained, together with the right to enter on the same or any part thereof for the purposes of exploring for oils and gases thereon and developing and working such mines as might be found, which contract has at all times since the same was entered into been kept in full force and effect. The land is situate in an arid region of the state, is unproductive in its natural state, is covered with a native growth of sage brush, is incapable of raising any form of crop whatsoever without irrigation, is not irrigated, and is not situate under any irrigation canal or system from which it can be irrigated. Prior to July 12, 1916, the applicant discovered on a certain described quarter section of such land valuable petroleum oils and gases in paying quantities, and on the day named applied to the defendant, who is the duly elected and acting land commissioner of the state of Washington and the officer of the state who is vested with power to lease state lands for the purpose of mining for oils and gases, for a lease of the quarter section for that purpose, tendering to the defendant all of the costs and charges provided by statute as a condition precedent to procuring such a lease. The lease was refused by the defendant, and the prayer of the petition is for a peremptory writ commanding him to enter into it.

The statute in force at the time the contract with Macy was entered into (Rem. 1915 Code, § 6675) contains the following provisions:

"All state lands shall be sold on the following terms: One-tenth to be paid on the date of sale and one-tenth to be paid one year from the date of issuance of the contract of sale and one-tenth annually thereafter until the full purchase price has been paid. . . . Provided, further, that each and every contract for the sale of any state lands, or deeds or patents to such state lands except deeds or patents issued pursuant to contracts heretofore made shall contain the following saving clause: 'The party of the first part hereby expressly saves, excepts and reserves out of the grant hereby made, unto itself, its successors, and assigns forever, all oils, gases, coal, ores, minerals, and fossils; . . . and it also hereby expressly saves and reserves out of the grant hereby made, unto itself, its successors and assigns forever, the right to enter by itself, its agents, attorneys and servants upon said lands or any part or parts thereof, at any and all times, for the purpose of opening, developing and working mines thereon, and taking out and removing therefrom all such oils, gases, coal, ores, minerals and fossils, and to that end it further expressly reserves out of the grant hereby made, unto itself, its successors and assigns forever, the right by its or their agents, servants and attorneys at any and all times to erect, construct, maintain and use all such buildings, machinery, roads and railroads, sink such shafts, remove such soil, and to remain on said lands or any part thereof for the business of mining and to occupy as much of said lands as may be necessary or convenient for the successful prosecution of such mining business hereby expressly reserving to itself, its successors and assigns, as aforesaid, generally, all rights and powers in, to, and over said land, whether herein expressed or not, reasonably necessary or convenient to render beneficial and efficient the complete enjoyment of the property and rights hereby expressly reserved'; Provided, further, that no rights shall be exercised under this reservation by the state, its successors or assigns, until provision has been made by the state, its successors or assigns to pay to the owner of the land upon which the rights herein reserved to the state, its successors or assigns or sought to be exercised, full pay-

ment for all damages sustained by said owner, by reason of entering upon said land."

The section of the statute relating to leases of land containing petroleum and natural gases (Rem. 1915 Code, § 6791) reads as follows:

"The commissioner of public lands of the state of Washington is hereby authorized to execute leases and contracts for the mining and extraction of petroleum and natural gas from any land belonging to the state or from any lands in which the state may hereafter acquire title, subject to the conditions hereinafter provided."

In *State ex rel. Pindall v. Ross*, 55 Wash. 242, 104 Pac. 216, we held, when construing the statute with reference to the leasing of state lands for mining purposes, that the land commissioner was without discretion with regard thereto, but that he must lease on application of a person qualified to take who fully complies with the provisions of the statute. The same rule applies to the present statute, and the applicant is entitled to a lease of the lands here in question if they are the subject of lease and the applicant has fully complied with the statutes relating thereto.

It is the contention of the *Attorney General*, representing the land commissioner, that the lands are not subject to lease for the purposes for which they are sought, for two reasons; first, because the statutes relating to leases for mining purposes apply only to unencumbered lands of the state, and that these lands are not unencumbered; and second, because there has been no compliance with the last proviso of the section first quoted, in that no provision has been made to pay to the owner of the land upon which the rights are sought to be exercised the damages that will be sustained by the owner by reason of entering upon the land.

The first of these objections cannot, in our opinion, be sustained. It is true that the statute authorizing the lease of lands for mining and for the extraction of petroleum and nat-

ural gases uses the expression "land belonging to the state" in describing the lands subject to the lease, yet we think it includes lands the title to which stands in the condition of the lands here in question. The language employed is general. The statute was intended to be operative. The legislature has not authorized the state itself to engage in the business of mining and, if it may not lease these reserved rights, it must follow that no means exist by which such rights may be made available to the state. While the language is perhaps not the most happy that could be employed to express the idea, we are constrained to conclude that these reserved rights are subject to lease.

We are clear, however, that the application was properly denied on the second ground stated. It will be observed that it is expressly provided in the second of the provisos in the first section quoted that no rights shall be exercised under the reservation, either by the state or its successors or assigns, until provision has been made for the payment to the owner of the land of all damages which he will sustain by reason of entering upon such land. This is a condition precedent to any action in the premises, and includes the entering into of the lease as well as the act of entering upon the property for exploring or mining purposes. Since it is conceded that these damages have not been ascertained or paid, the land commissioner acted within his authority in refusing to enter into the lease.

We have not overlooked the argument to the effect that a person holding a contract to purchase is not an owner, and that, in this particular instance, the purchaser will not be damaged because of the valueless character of the land for the purposes for which he is permitted to use it. But we have no hesitancy in saying that the contracting purchaser is an owner within the meaning of the statute, and whether or not the land is valuable for his purposes is a question on which he has a right to be heard in a court of competent jurisdic-

tion; he is not obligated to appear and contest the question before the land commissioner.

The application for the writ is denied.

MORRIS, C. J., MOUNT, and PARKER, JJ., concur.